

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-22-2004

# Bridgemohan v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1763

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Bridgemohan v. Atty Gen USA" (2004). *2004 Decisions.* Paper 790.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/790

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1763

DHANPAUL BRIDGEMOHAN,

Petitioner

v.

JOHN ASHCROFT,
Attorney General of the United States,

Respondent

_____

On petition for review of a final order
of the Board of Immigration Appeals
File No: A79-437-025

_____

Submitted pursuant to Third Circuit LAR 34.1(a)
on March 25, 2004

Before: FUENTES, SMITH, and GIBSON,[*] *Circuit Judges*

(Filed: April 22, 2004)

_____

OPINION OF THE COURT
_____

JOHN R. GIBSON, *Circuit Judge*.

---

[*]The Honorable John R. Gibson, Senior Circuit Judge for the United States Court of
Appeals for the Eighth Circuit, sitting by designation.

Dhanpaul Bridgemohan seeks review of a final order of removal issued by the Board of Immigration Appeals. We deny his petition for review.

Bridgemohan is a native and citizen of Guyana. On March 3, 2002, he was intercepted as he tried to enter the United States near Miami International Airport. He was detained for a full asylum hearing after an immigration inspector determined that Bridgemohan had established a credible fear of persecution if returned to his native country. Bridgemohan sought asylum, withholding of removal to Guyana, and protection under the Convention Against Torture based on his alleged past persecution and/or well-founded fear of future persecution.

Bridgemohan's ethnicity is Indo-Guyanese. While in Guyana, he performed volunteer work on a few occasions for the Peoples Progressive Party (PPP), which is predominantly an Indo-Guyanese party. Bridgemohan described himself as a supporter, but not a member, of this party. His volunteer work consisted of putting up campaign posters and helping with meetings.

Bridgemohan testified that he was assaulted on three separate occasions, and that the assaults were directly related to his support of the PPP. In each instance, his assailants were Afro-Guyanese, an ethnic group commonly associated with the rival Peoples National Congress (PNC) party.

The first incident occurred in February 2001, as Bridgemohan walked to the store. He was attacked by two Afro-Guyanese men who wore T-shirts with the emblem of a

2

palm tree, identified by Bridgemohan as the symbol of the PNC. The men punched and pushed him, called him a "coolie dog" – a derogatory term for persons of Indo-Guyanese descent – and threatened to kill him.

The second incident occurred two months later. A group of Afro-Guyanese men stopped a bus in which Bridgemohan was riding and forced the Indo-Guyanese passengers off. The men harassed these passengers and threatened to kill the "coolie dogs." Bridgemohan said that one of the Afro-Guyanese men identified him as the person who was putting up campaign posters, and that he was robbed and beaten.

The third incident took place in August of the same year. Bridgemohan testified that two Afro-Guyanese men approached him in the street, pushed and kicked him, and told him that they did not want to see the "coolie dog" around anymore.

Bridgemohan's request for asylum and withholding were based in part on the alleged failure of the police in Guyana to protect him. He testified that he reported each of the first two incidents to the police, most of whom are Afro-Guyanese, but that the police did nothing more than inform him that they would look into his complaints. Bridgemohan also spoke to an Indo-Guyanese police officer on one occasion who told him privately that little would be done about the incidents because of Bridgemohan's ethnicity.

The Immigration Judge concluded that, even accepting Bridgemohan's testimony as true, he failed to sustain his burden of establishing past persecution or a well-founded

fear of persecution based upon the protected grounds enumerated in the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(42) (2000).[1] The Board of Immigration Appeals affirmed the Immigration Judge's decision without opinion.

The Attorney General may grant asylum to an alien who demonstrates that he or she is a refugee. See 8 U.S.C. § 1158(b)(1) (2000). In order to establish himself as a refugee, Bridgemohan must demonstrate that he is unable or unwilling to return to Guyana because of past persecution or a well-founded fear of future persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). Bridgemohan can obtain asylum on the grounds of past persecution if he establishes: 1) an incident, or incidents, that rise to the level of persecution; 2) which took place on account of one of the statutorily protected grounds; 3) and which was committed by the government or by forces the government was unwilling or unable to control. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (quoting Navas v. INS, 217 F.3d 646, 655 (9th Cir. 2000)). He can demonstrate a well-founded fear of future persecution by showing that he has a genuine fear, which would be shared by a reasonable person in his circumstances, of persecution upon return to Guyana. Gao, 299 F.3d at 271. As with past persecution, Bridgemohan must provide "conclusive evidence" that the threat of future persecution is based on one of the five grounds

---

[1]The Immigration Judge also denied Bridgemohan's request for protection under the Convention Against Torture, but Bridgemohan does not appeal this denial.

enumerated in the statute.  Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003).

Because the Board summarily affirmed the Immigration Judge's decision, we treat the judge's decision as the "final agency determination" for purposes of our review.[2]  See 8 C.F.R. § 3.1(a)(7)(iii) (2002); Gao, 299 F.3d at 271.  The scope of our review is "extremely narrow" because Congress has delegated administration and enforcement of the Immigration and Nationality Act to the Attorney General, who in turn has vested his power in the Board.  Id.

"Whether an asylum applicant has demonstrated past persecution or a well-founded fear of future persecution is a factual determination reviewed under the substantial evidence standard."  Id. at 272. "Under the substantial evidence standard, the [Immigration Judge's] finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it."  Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).  If a petitioner fails to establish that he is entitled to asylum, we presume he cannot meet the higher standard for withholding of removal.  Janusiak v. INS, 947 F.2d 46, 47-48 (3d Cir. 1991).

We conclude that substantial evidence supports the Immigration Judge's denial of asylum.  First, the record supports the Immigration Judge's conclusion that Bridgemohan

---

[2]Contrary to Bridgemohan's assertions, the affirmation of the Immigration Judge's decision by a single Board member without opinion does not deny Bridgemohan's right to meaningful appellate review, nor any other substantive right. Dia v. Ashcroft, 353 F.3d 228, 234-45 (3d Cir. 2003) (en banc).

5

failed to meet his burden of proving past persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). Bridgemohan's own testimony on the three assaults he suffered fails to establish that they resulted from his political support for the PPP. In the first and third incidents, Bridgemohan provided virtually no evidence that his attackers even knew of his support for the PPP, and he gave only limited evidence that the attackers were members of the rival PNC. He testified that he was identified as a supporter of the PPP in the second incident, but did not give any indication that the assault occurred "on account of" this political association. Instead, the evidence appeared to demonstrate only that the attackers pulled several people off a bus for the purpose of robbing them.

Bridgemohan makes a stronger case when he argues that he suffered past persecution on account of his race. Nonetheless, there was substantial evidence in the record to support the Immigration Judge's conclusion that he did not meet his burden of proving that the acts of violence were committed by the government or by forces the government was unwilling to control. Bridgemohan does not argue that the police committed the acts of violence themselves, but claims that the police refused to protect him. However, he testified that the police told him they would look into his allegations each time he reported them. While the police may not have investigated the allegations to his satisfaction, we are not compelled by the record to conclude that the government was entirely unwilling or unable to control the Afro-Guyanese or members of the PNC. Thus,

6

the situation here is unlike the cases relied upon by Bridgemohan, including <u>Surita v. INS</u>, 95 F.3d 814, 820 (9th Cir. 2001), and <u>Arjune v. Ashcroft</u>, No. 01-1468 (3d Cir. 2001) (unpublished opinion), where the police officers made clear to the victim in each case their unwillingness to investigate his claims. Furthermore, the record shows that Bridgemohan's own party, the PPP, won the 2001 elections and had held political power since 1992. The record also shows that persons of Indo-Guyanese descent make up the majority of Guyana's population. This evidence of political and social power further weakens Bridgemohan's claim that he suffered persecution at the hands of forces the government was unwilling or unable to control. Accordingly, we deny Bridgemohan's petition for review of the denial of his claim for asylum for past persecution.

For the same reasons, we deny Bridgemohan's petition for review of the denial of asylum based on a well-founded fear of future persecution. Bridgemohan relied upon the same evidence in both his past and future persecution claims, and it is insufficient to compel us to conclude that any persecution he may suffer in the future will be on account of one of the five protected grounds or that it will be suffered at the hands of forces the government is unwilling or unable to control.